IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE SOTO,

                Plaintiff,

  v.

KELLY RICKEY, MATTHEW GRANT,
RICK DONOVAN, WILLIAM GEE,
JASON KROCKER, TRAVIS BITTELMAN, and
WILLIAM LEFEVRE,[1]

                Defendants.

OPINION & ORDER

14-cv-514-jdp

---

Plaintiff Jose Soto, represented by counsel, is proceeding on claims that defendants violated his rights under the Eighth Amendment by using excessive force against him and that certain defendants violated his rights under the First Amendment by retaliating against him when he mounted a hunger strike to protest the excessive force used against him.

Defendants move for summary judgment. Dkt. 47. The court will grant defendants' motion in part and dismiss Soto's First Amendment claim against defendant Travis Bittelman. But genuine issues of material fact preclude entry of summary judgment on Soto's excessive force claims against the remaining defendants, so those claims will proceed to trial.

## UNDISPUTED FACTS

I draw the following facts from the parties' summary judgment materials and previous documents submitted in this litigation. The facts are undisputed except where noted.

---

[1] I have amended the caption to reflect the correct spelling of defendants' names.

Plaintiff Jose Soto is a prisoner in the custody of the Wisconsin Department of Corrections (DOC). He was incarcerated at Columbia Correctional Institution (CCI), where defendants worked, during the relevant events in this case.

## A. July 18, 2011

On the morning of July 18, 2011, Soto met with a doctor concerning an injury to his foot. The doctor refused to treat or document the injury. When the appointment ended, defendant Correctional Officer William LeFevre began to escort Soto back to his cell. Soto's hands were secured with handcuffs in front of his body, and the cuffs were attached to a belt around his waist. LeFevre's left hand was placed on Soto's right arm as they walked together towards Soto's cell. As they passed the "bubble" (a command center encased in glass from which correctional officers monitor activity and open and close fortified doors), Soto told defendant Correctional Sergeant William Gee, who was stationed in the bubble, that he wanted to talk to a ranking officer about his foot injury.

What happened in the next few minutes is at the heart of Soto's Eighth Amendment claims and is highly disputed, even though there is a silent security camera video showing part of the incident. According to Soto, LeFevre "yanked" Soto's arm, causing Soto to spin, and then "slammed" Soto to the floor. Dkt. 46 (Soto Dep. 13:21). As Soto lay on the floor, defendant Correctional Officer Jason Krocker and non-party Correctional Officer Gray arrived and helped LeFevre pin Soto to the floor (despite Soto's lack of resistance). Defendant Correctional Sergeant Rick Donovan secured handcuffs to Soto's ankles. LeFevre, Krocker, and Gray then "yanked" Soto to his feet and ordered Soto to walk. *Id.* (Soto Dep. 17:24). Soto told them that he couldn't walk because of his foot injury and because the handcuffs on his ankles were too tight to allow for movement. Krocker said, "Fuck this shit! You're going to walk fast

2

and now!" *Id.* (Soto Dep. 18:7-8). When Soto did not comply, Krocker took Soto by the neck and dragged him across the room until a senior officer ordered Krocker to stop, pointing out that Soto could not walk because his ankles were secured with handcuffs.

According to defendants, Soto tried to stop at the bubble. When LeFevre told Soto to return to his cell, Soto spun and tried to pull away from LeFevre. LeFevre put his hands on Soto's shoulders, but his hands slipped and LeFevre started to fall. LeFevre "directed Soto to the floor," where LeFevre tried to "stabilize" him. Dkt 51, ¶ 10. When Soto refused to roll onto his stomach, LeFevre told him to stop resisting. Krocker and Gray arrived and helped LeFevre restrain Soto. Donovan went to the bubble and asked Gee for a pair of leg restraints. Gee gave Donovan "what appeared to be leg restraints," but were in fact handcuffs made for people with extra-large wrists. *Id.* ¶ 12. Donovan put the restraints on Soto's ankles while defendant Correctional Officer Kelly Rickey held Soto's legs. The officers helped Soto kneel and then stand. Rickey and defendant Correctional Officer Matthew Grant tried to escort Soto to his cell, but Soto stopped and tried to get non-party Unit Manager Ashworth's attention. Rickey ordered Soto to face forward and continue walking, but Soto did not comply. Rickey repeated the order. Soto refused to walk and "became loud and disruptive." Dkt. 52, ¶ 10. Krocker "secured Soto's head to [Krocker's] chest" by placing one hand on Soto's forehead and another hand on Soto's chin, "turned Soto around, and instructed him to walk." *Id.* ¶ 11. Soto did not walk, but Krocker did: Krocker walked backwards for 10 to 12 feet as Soto dragged his feet. Krocker again ordered Soto to walk. Soto said he could not do so. Krocker and his fellow officers then realized that Soto's ankles were bound with handcuffs instead of leg restraints, "meaning there was not enough length of chain between the restraints to allow his feet to go back and forth." *Id.* ¶ 14.

The parties' versions of events reconverge at this point. They agree that Gray brought in a wheelchair, which the officers used to escort Soto to the Health Services Unit for a standard medical evaluation.

**B. Hunger strike**

After the July 18 incident, Soto began a hunger strike to protest what he viewed as the excessive use of force against him. At that time, Soto was housed on the Disciplinary Separation 1 Unit at CCI, where defendant Correctional Officer Travis Bittelman worked the first shift (from 6 a.m. until 2 p.m.).

Again, the parties' versions of events diverge. According to Soto, Bittelman was upset about the extra paperwork that Soto's hunger strike was creating, so around September 5, 2011, he started turning on the light in Soto's cell and directing other guards to leave the light on. This deprived Soto of sleep. Bittelman also refused Soto his medications.

According to Bittelman, he never refused Soto his medications, used the light in Soto's cell to harass Soto, or directed any other guards to do so. Nor was he especially upset by the hunger strike, which would have only created a small amount of additional paperwork.

ANALYSIS

To succeed on a motion for summary judgment, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummet v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). All reasonable inferences from the facts in the summary judgment record must be

4

drawn in Soto's favor as the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). If Soto fails to establish the existence of an essential element on which he will bear the burden of proof at trial, summary judgment for defendants is proper. *See Celotex*, 477 U.S. at 322.

## A. Excessive force

Soto contends that he was subjected to excessive force on July 18, 2011, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. To withstand summary judgment, Soto must point to admissible evidence that each defendant applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The factors relevant to this determination include (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321.

Here, a reasonable juror could find that each of the officers present during the July 28 incident applied force to Soto maliciously and sadistically. Soto adduces evidence that LeFevre, without provocation, slammed Soto to the floor, pinned him down, and yanked him to his feet. A reasonable juror could find that LeFevre had no need to use any force under the circumstances and applied force maliciously and sadistically to cause Soto harm. Defendants admit that Gee handed Donovan handcuffs. A reasonable juror could find that Gee did so intentionally, not mistakenly. Likewise, defendants admit that Donovan secured Soto's ankles with handcuffs while Rickey held down Soto's legs. A reasonable juror could conclude that Donovan and Rickey were aware that Donovan was applying handcuffs, which would not allow

5

Soto to walk, instead of leg restraints and that Donovan did so, and Rickey did not stop him, to cause Soto harm, rather than to maintain or restore discipline. Defendants admit that Rickey and Grant then ordered Soto to walk. A reasonable juror could conclude that Rickey and Grant were aware that Soto's legs were restrained with handcuffs and ordered him to walk out of malice. And Soto adduces evidence that Krocker helped LeFevre pin Soto to the floor, yanked him to his feet, and then dragged him by his head and neck for 10 to 12 feet despite Soto's lack of resistance and despite knowing that Soto was unable to walk because of the handcuffs. A reasonable juror could conclude that Krocker acted maliciously and sadistically, rather than to maintain or restore discipline.

Defendants argue that under their version of the facts, they used an appropriate amount of force to restrain Soto in light of the threat he posed to the safety of the staff. And they argue that the court must accept their version of the facts as undisputed at the summary judgment stage because they adduce a video of the incident. Defendants cite *Scott v. Harris*, in which the U.S. Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380 (2007). In *Scott*, a law enforcement officer moved for summary judgment on the plaintiff's excessive force claim and adduced a videotape of the incident that "quite clearly contradict[ed] the version of the story told by" the plaintiff. *Id.* at 378. The Supreme Court found that the plaintiff's "version of events [was] so utterly discredited by the record that no reasonable jury could have believed him" and held that the court "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.* at 380-81.

But this case is not like *Scott*. The grainy, silent videotape that defendants rely on does not unequivocally refute either version of the incident: It shows a guard, presumably LeFevre, walking with his hand on an inmate, presumably Soto. As they approach the bubble, Soto turns toward the glass window. They continue walking. Soto spins, LeFevre grabs him, and they both fall to the floor. It's hard to tell whether Soto or LeFevre instigated the "spin." Two other guards, presumably Krocker and Gray, arrive and get down on the floor. Soto is on his back or side for a while before rolling onto his stomach, but again, it's hard to tell whether Soto was resisting or whether the guards were holding him down on his side. Three more guards appear, presumably Grant, Rickey, and Donovan. Donovan goes to the bubble and gets what everyone agrees are handcuffs, which he then puts on Soto's ankles. Five more guards arrive. Soto is lifted onto his knees, and then onto his feet. (It's hard to say whether the lift was "help," as defendants claim, or closer to a "yank," as Soto describes it.) Grant and Rickey walk with Soto out of the frame. As they exit, Soto appears to be falling forward. The rest of the action continues out of view.

There is little in the video that affirmatively supports Soto's allegation of excessive force. But the video does not contradict Soto's version of the events. So we are left with genuine issues of material fact that a jury must decide. The court will deny defendants' summary judgment motion as to Rickey, Grant, Donovan, Gee, Krocker, and LeFevre.

**B. Retaliation**

Soto contends that Bittelman retaliated against him for engaging in a hunger strike by refusing him his medication, turning his cell light on, and instructing other guards to keep his cell light on, in violation of his rights under the First Amendment. To prevail on his First Amendment retaliation claim, Soto must show that: (1) he engaged in activity protected by the

7

First Amendment; (2) Bittelman took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in Bittelman's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Soto argues that a hunger strike is an activity protected by the First Amendment. Defendants disagree and argue that even if a hunger strike is protected by the First Amendment, it is not a clearly established right, thus implicating the doctrine of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In deciding whether a right is "clearly established," courts ask whether, "at the time of the challenged conduct, the right's contours [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Chasensky v. Walker*, 740 F. 3d 1088, 1094 (7th Cir. 2014) (quoting *Humphries v. Milwaukee County*, 702 F.3d 1003, 1006 (7th Cir. 2012)). A plaintiff bears the burden of establishing that the constitutional right was clearly established. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). Although the plaintiff need not point to a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In other words, 'the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right.'" *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015) (quoting *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005)). So the question here is whether

Soto has established that a reasonable official in Bittelman's position in 2011 would have known that a prisoner has a constitutional right to engage in a hunger strike.

Soto points to *Birdo v. Gomez*, a recent decision by the Northern District of Illinois, which concluded that a prisoner had a constitutional right to protest his prison conditions by engaging in a hunger strike. No. 13-cv-6864, 2016 WL 4011227, at *16-17 (N.D. Ill. July 27, 2016) (collecting cases indicating, or assuming, that a hunger strike is an activity protected under the First Amendment). But as defendants point out, when the court considered the issue of qualified immunity in a subsequent opinion, it concluded that at the time of the hunger strike and retaliatory acts, the fall of 2012, a prisoner's right to engage in a hunger strike was not clearly established. *See Birdo v. Gomez*, No. 13-cv-6864, 2016 WL 6070173, at *5-6 (N.D. Ill. Oct. 17, 2016) (collecting cases from 2007 to 2012 concluding that hunger strikes are, or are not, protected by the First Amendment). Thus, according to *Birdo*'s analysis, Soto's right to engage in a hunger strike in 2011 was not clearly established.

I agree. Although some courts have concluded that hunger strikes may be protected under the First Amendment in some circumstances, *see Stefanoff v. Hays County*, 154 F.3d 523, 527 (5th Cir. 1998) ("[A] hunger strike may be protected by the First Amendment if it was intended to convey a particularized message."), that right was not clearly established in 2011. Soto's case presents the circumstance in which qualified immunity was meant to apply. "[T]he point of qualified immunity and its 'clearly established' requirement is that government officials are not, as a rule, liable for damages in close cases." *Kikumura v. Turner*, 28 F.3d 592, 597 (7th Cir. 1994).I have considered whether it would be helpful to future cases to decide whether the First Amendment would apply to Soto's hunger strike. I conclude that this is not an appropriate case in which to do that. Disputes of fact about the retaliation prong of the

analysis would require that the matter go to trial, thus depriving Bittelman of the benefit of his immunity. I will grant defendants' motion for summary judgment on Soto's retaliation claim and dismiss Bittelman from the case.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment, Dkt. 47, is GRANTED in part and DENIED in part, consistent with the opinion above.

2. Defendant Travis Bittelman is dismissed from the case.

Entered May 25, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge